UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| PBR GROUP, LLC d/b/a TUGGERS a/k/a TUGGERS BURGER & ALE HOUSE, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:23-cv-04153-SLD-JEH ) |
| SOO LINE RAILROAD COMPANY d/b/a CANADIAN PACIFIC, | ) ) ) ) |
| Defendant. | ) |

ORDER

Before the Court are Defendant Soo Line Railroad Company d/b/a Canadian Pacific's ("CPKC") Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 28, and Plaintiff PBR Group, LLC d/b/a Tuggers a/k/a Tuggers Burger & Ale House's ("Tuggers") Motion for Leave to File Over-Sized Memorandum, ECF No. 32. For the following reasons, the motions are GRANTED.

BACKGROUND[1]

In 2016, Tuggers purchased a restaurant and bar (the "Restaurant") located on a parcel of land that abuts or abutted the Mississippi River at 201 N. Main Street, Port Byron, Illinois. According to Tuggers, in approximately 1860, the Sterling Rock Island Railroad Company obtained, through condemnation, a right-of-way across the parcel of land. Tuggers further alleges that in 1902, A.J. Brewster conveyed parts of real estate lots west of the right-of-way to the Chicago, Milwaukee & St. Paul Railway.

---

[1] When reviewing a motion to dismiss, the court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in favor of the plaintiff." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). The factual background is drawn from the Amended Complaint, ECF No. 27.

1

The Restaurant, previously called It's On The River, operated continuously from 2006 to 2016. In 2006, It's On The River obtained a permit from the Army Corps of Engineers and installed a dock to allow boaters to access the Restaurant from the water. After acquiring the Restaurant in 2016, Tuggers spent a significant amount of money to remodel the Restaurant and obtained a second permit from the Army Corps of Engineers to install an additional dock.[2] To allow its patrons to access the Restaurant from the docks, It's On The River, and later Tuggers, made a pedestrian crossing across the railroad tracks without authorization from CPKC.

Tuggers caters to boaters and relies on income generated during the boating season. As a "boater-driven business," at least sixty-five percent of Tuggers's business involves customers using its docks. Am. Compl. ¶¶ 13–14, ECF No. 27. Tuggers, like many businesses and homeowners whose real estate abuts the Mississippi River, as well as the general public who wish to access the river, must cross CPKC's railroad tracks to access docks, houses, businesses, and the river itself. Tuggers alleges that "[t]he vast majority of these crossings are unrestricted and/or unpermitted." Id. ¶ 15. CPKC's trains travel through Port Byron once a day, generally in the morning when Tuggers is not open, five or six days per week.

In January 2023, Tuggers was informed that CPKC objected to (1) alleged water runoff from the Restaurant and (2) the use of the "illegal crossing" by the public and Tuggers's patrons. Id. ¶ 17.B. Tuggers responded by changing its water drainage system and stated that it would support signage or other reasonable safety features to make the crossing safer. Despite repeated requests from Tuggers to amicably resolve the pedestrian crossing issue, CPKC did not accept

---

[2] Tuggers specifically alleges that Enright Enterprises, the prior owner of It's On The River, obtained the second permit from the Army Corp of Engineers. The two permits were transferred to Platinum Property Investments, Inc., which then transferred the permits to Tuggers. For purposes of resolving the pending motion to dismiss, the material facts are that Tuggers possesses two dock permits from the Army Corp of Engineers, one issued in 2006 and one issued in 2016.

2

the solutions offered by Tuggers. On September 9, 2023, Tuggers learned from the utility company that CPKC intended to install a fence just a few feet away from Tuggers's back door, running the length of the Restaurant. Tuggers alleges that this "action [by CPKC] appears to be vindictive in nature" because CPKC is not installing a fence along any other properties in Port Byron. *Id.* ¶ 21.

Tuggers asserts that it holds a right and/or easement to use the pedestrian crossing and its docks because (1) "the permitted docks and/or the Restaurant are land locked by virtue of CPKC's obtaining a right-of-way, the conveyance in 1902, and/or the permitting of the two docks"; (2) "CPKC is estopped from denying access to the pedestrian crossing because it allowed, with full knowledge, use of and improvements of the docks, Restaurant, and pedestrian crossing from 2006 to 2023"; and (3) "Tuggers has the right to access its docks through riparian rights that existed prior to the severance of the real estate and/or currently holding such rights and/or public easement of navigation allowing access of the banks of a navigable waterway." *Id.* ¶ 22 (capitalization altered).

On September 14, 2023, Tuggers filed a complaint against CPKC in state court. Compl., Not. Removal Ex. A, ECF No. 1-1. The action was removed to federal court on September 19, 2023. Not. Removal, ECF No. 1. Tuggers moved for a preliminary injunction, *see* ECF Nos. 9–10, which the Court denied on September 26, 2023. Tuggers filed an amended complaint on February 5, 2024, seeking declaratory relief, damages for tortious interference with existing and prospective business relations, and temporary and permanent injunctions. CPKC moves to dismiss Tuggers's amended complaint, arguing that Tuggers possesses no legal property right to the land abutting the Mississippi River and no easement across CPKC's railroad tracks. *See generally* Mem. Supp. Mot. Dismiss, ECF No. 29.

# DISCUSSION

## I. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion to dismiss, a court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). Legal conclusions that contain threadbare recitals of the elements of a claim are not entitled to a presumption of truth. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint must contain more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alterations omitted).

## II. Analysis

CPKC argues that Tuggers's claims fail as a matter of law because CPKC owns the real property on the river, and thus CPKC—not Tuggers—possesses riparian rights. Additionally, CPKC asserts that Tuggers does not and cannot allege any type of easement that would allow Tuggers or its patrons to cross CPKC's property without authorization. CPKC also argues that because Tuggers's claims implicate and interfere with rail transportation, those claims are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101–16106. Because courts generally adopt a presumption against preemption absent clear

intent from Congress, *see Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013), and because the Court finds CPKC's property rights arguments dispositive, the Court does not address whether the ICCTA preempts Tuggers's state law claims in this suit.

### A. Declaratory Relief

Tuggers brings its claim for declaratory relief under the Illinois Declaratory Judgment Act, 735 ILCS 5/2-701. In cases of actual controversy, a court may make "binding declarations of rights, having the force of final judgments." *Id.* 5/2-701(a). Tuggers "seeks a declaration of its rights for it and/or its customers, including the rights of easement and/or riparian rights, to utilize the pedestrian crossing and/or docks to access Tuggers unimpeded and/or vice versa." Am. Compl. ¶ 26 (capitalization altered).

#### 1. Riparian Rights

Tuggers alleges that "[t]he Restaurant is located on a contiguous parcel of land that abuts/abutted the Mississippi River, a navigable waterway, holding riparian rights." *Id.* ¶ 5. CPKC argues (1) that Tuggers does not own the land where the Restaurant is located as Tuggers merely leases it, Mem. Supp. Mot. Dismiss 2 n.1; (2) the land where the Restaurant is located does not abut the Mississippi River, *id.* at 6–7; and (3) CPKC owns the land that abuts the River, *id.* at 6–10. "The term 'riparian rights' refers, in general, to the rights of an owner of land that borders on a body of water or watercourse to the use of the water." *Alderson v. Fatlan*, 898 N.E.2d 595, 599 (Ill. 2008) (citing *Riparian Rights*, *Black's Law Dictionary* (8th ed. 2004)). "Riparian rights exist by operation of law and solely because the property abuts a body of water." *Holm v. Kodat*, 211 N.E.3d 310, 315 (Ill. 2022).

In its response to CPKC's motion to dismiss, Tuggers appears to argue that the land itself where the Restaurant is located possesses riparian rights, *see* Mem. Resistance Mot. Dismiss 30,

ECF No. 34 ("The parcel of land, therefore, holds/held riparian rights."), but provides no legal authority to support this assertion. Tuggers's conclusory and vague statement—that the land under the Restaurant either abuts or abutted the River and therefore, the land or the Restaurant or Tuggers (it is unclear which) holds riparian rights—does not provide factual content that would make Tuggers's claim facially plausible. *See Kap Holdings*, 55 F.4th at 524. As an alternative argument, though, Tuggers asserts that "[l]essees and grantees of riparian rights and owners of rights-of-way or easements are also riparian owners to the extent of their interest." *Id.* at 29–30 (citing *Indian Refin. Co. v Ambraw River Drainage Dist.*, 1 F. Supp. 937, 938 (E.D. Ill. 1932)). Accordingly, if Tuggers can show that it possesses an easement, it may be able to support its claim for riparian rights.

     **2. Easements**

"An easement is a right or privilege in the real estate of another." *Chi. Title Land Tr. Co. v. JS II, LLC*, 977 N.E.2d 198, 207 (Ill. App. Ct. 2012) (quotation marks omitted). "If an easement is found to exist, the owner of the easement has the right, for a limited purpose, to pass over or use the land of another." *Id.* An easement "can be created only by grant, by implication, or by prescription." *Martin v. See*, 598 N.E.2d 321, 327 (Ill. App. Ct. 1992). In the Amended Complaint, Tuggers does not specify the type of easement it purportedly possesses. CPKC addresses three different types of easements and argues that Tuggers does not and cannot plausibly allege any of the three types. The Court will address each easement type in turn.

       **a. Implied Easement**

In its Motion for Preliminary Injunction, Tuggers argued "that it holds an implied easement, including an implied easement of necessity, to the pedestrian crossing" over CPKC's railroad tracks. Mot. Prelim. Inj. ¶ 39.A. (capitalization altered), ECF No. 9. "Two types of

implied easements exist: the easement by necessity and the easement implied from a preexisting use," *Smith v. Heissinger*, 745 N.E.2d 666, 670 (Ill. App. Ct. 2001), and the elements of both are remarkably similar. The elements of an easement by necessity are: "(1) ownership of the dominant and servient estates by a common grantor followed by separation of title; (2) use of the easement before separation in an apparent, obvious, continuous, and manifestly permanent manner; and (3) necessity of the easement to the beneficial enjoyment of the dominant estate." *Smith*, 745 N.E.2d at 670. Similarly, the elements of an easement implied from a preexisting use are:

> [F]irst, common ownership of the claimed dominant and servient parcels and a subsequent conveyance or transfer separating that ownership; second, before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent; and third, the claimed easement is necessary and beneficial to the enjoyment of the parcel conveyed or retained by the grantor or transferrer.

*Granite Props. Ltd. P'ship v. Manns*, 512 N.E.2d 1230, 1236 (Ill. 1987). Both types of implied easements require Tuggers to show that there was a common owner of its property and CPKC's property and that the property was then separated into two tracts. It would then need to show either necessity or preexisting use. "[I]f an easement by implication does not arise at the moment of severance, a change in circumstances since the severance, no matter how great, cannot create any such easement." *Emanuel v. Hernandez*, 728 N.E.2d 1249, 1252 (Ill. App. Ct. 2000). Tuggers bears the burden of proof to establish each element of an implied easement. *Id.*

Tuggers's attempt to establish an implied easement fails at the first element because it cannot show common ownership. It asserts that the first element "was satisfied in 2006, when It's On The River applied for and received a permit for construction and use of the original boat dock. The permit, construction, ownership and use of the boat dock created a protected property

7

interest on behalf of It's On The River." Mem. Resistance Mot. Dismiss 22 (footnote omitted). Tuggers likens its docks to a "land-locked parcel of property." *Id.* at 20. It appears to recognize that the Restaurant itself is not landlocked but argues that "its docks certainly are as CPKC has stated those accessing its land will be treated as trespassers, essentially rendering the dock an island onto [sic] itself." *Id.* at 20–21 (capitalization altered). The Court, however, already rejected this specious argument during the preliminary injunction hearing:

> THE COURT: But [for an implied easement, there] has to be a common owner and the owner here is the railroad and there was no separation of the railroad's land. Just because there's adjacent -- I mean, allowing a dock to be built in a river, how is that a separating event from a common owner?
> MR. HAVERCAMP: Because the only way to those docks are from -- the only -- those docks can only be in the river, so it's never gonna be specifically owned by a particular entity and, second of all, once the docks are constructed, the only way across them are to get across -- to utilize -- to get through the CP[KC] property would be over an easement, which of course has been there, just been allowed, so --
> THE COURT: How is a dock in the river real estate?
> MR. HAVERCAMP: Well, it's -- I don't know if I would call that real estate, your Honor. It's an interest in -- it's obviously a property interest, but I -- I guess I didn't see anything which would indicate that it is somehow considered real estate. It's -- I would call it a fixture, your Honor, to the real estate.
> THE COURT: Yeah, I don't think that's what's contemplated in the elements to establish implied easement, so I appreciate your arguments, but I don't think that they are pertinent to establishing that the land at issue was owned by one party, that being the railroad, and that that party somehow granted plaintiff title to some of the land as required by the doctrine.
> And then also because we don't even have a separation as contemplated by the implied easement law, and I don't think you can even establish prior use and certainly the only use that you argue was prior use was after some type of arguable separation, which was the -- as you're advancing, the dock, so I think you fail right out of the gates in terms of there even being land that was owned by one common owner and then a subsequent separation at all.
> And even if you arguably had a subsequent separation, all of the prior preexisting use would have to have occurred prior to that separation . . . .

Prelim. Inj. Mot. Hr'g Tr. 18:3–19:14, ECF No. 15. Tuggers has alleged no additional facts in the Amended Complaint that would alter the Court's analysis.

Moreover, Tuggers concedes that there is a boat launch downriver from the Restaurant, but asserts that "it is not for boats to tie up and stay for extended periods" and that, even if boats could stay for extended periods, there would not be enough room during the high boating season. Mem. Resistance Mot. Dismiss 21. "[A] showing of absolute necessity is not required in Illinois" to establish an implied easement, but "if available alternatives affording reasonable means of ingress and egress exist," a court will not find the existence of an implied easement. *Martin*, 598 N.E.2d at 328. Because Tuggers has not established the first element of common ownership of the land, it has not shown it holds any implied easement over CPKC's property.

### b. Easement by Estoppel

Tuggers alternatively requests that the Court recognize that it possesses an easement by estoppel, and that CPKC should be "estopped from denying access to the pedestrian crossing because it allowed, with full knowledge, use of and improvements of the docks, Restaurant, and pedestrian crossing from 2006 to 2023." Am. Compl. ¶ 22.B (capitalization altered); *see also* Pl.'s First Mem. Resistance First Mot. Dismiss 22, ECF No. 26 (arguing, in opposition to CPKC's first motion to dismiss, that Tuggers obtained an easement by estoppel). "An easement by estoppel is established where an owner of land makes representations to another and the other believes and relies upon the representations to his detriment." *In re Chi., Rock Island & Pac. R.R. Co.*, No. 75 B 2697, 1987 WL 16018, at *7 (N.D. Ill. Aug. 19, 1987), *aff'd sub nom. In re Chi., Rock Island & Pac. R.R. Co. v. Diamond Shamrock Refin. & Mktg. Co.*, 865 F.2d 807 (7th Cir. 1988). Courts may impose an easement by estoppel as an equitable "remedy on behalf of one who, in reliance upon the representations of an adjoining landowner concerning a purported easement, has taken an action concerning his land which would not have been taken absent those representations." *Klobucar v. Stancik*, 485 N.E.2d 1334, 1336 (Ill. App. Ct. 1985).

CPKC argues that Tuggers has failed to plead any representations by CPKC that induced reliance and that Tuggers has not presented any legal authority to support its contention that CPKC's silence or failure to object constitutes a "representation" in this context. Mem. Supp. Mot. Dismiss 13–14. CPKC asserts that Tuggers is making an easement by estoppel argument so as to circumvent the 20-year time requirement necessary to establish a prescriptive easement or adverse possession claim. *Id.* at 14; *see also Rush v. Collins*, 8 N.E.2d 659, 662–63 (Ill. 1937) (holding that an adverse possession right requires a showing that "a way has been used openly, uninterruptedly, continuously and exclusively for more than a period of twenty years"); Mem. Resistance Mot. Dismiss 22 (acknowledging that "CPKC did not specifically agree to the pedestrian crossing" and that only 17 years had passed since CPKC allegedly should have objected to the pedestrian crossing (capitalization altered)).

Tuggers argues that CPKC received public notice of It's On The River's permit to construct the first dock in 2006 and that CPKC saw the dock and pedestrian crossing being used by It's On The River from 2006 to 2017 and did not object. Mem. Resistance Mot. Dismiss 22. When Tuggers acquired the Restaurant, it expended substantial time and resources in remodeling the Restaurant and expanding the docks "with acquiesce [sic] and/or no objection by CPKC," *id.* at 24, and Tuggers alleges it would not have spent that time and money if it knew that "CPKC would try to cut off access to its permitted docks and/or pedestrian crossing," Am. Compl. ¶ 10 (capitalization altered). Tuggers asserts that CPKC "had legal notice and actual notice of the permitting, installation and expansion of the docks and the use of the pedestrian crossing and if it objected to the pedestrian crossing, it was obligated to state so at the time. It did not." Mem. Resistance Mot. Dismiss 28 (capitalization altered).

Tuggers cites to several cases for the proposition that silence can support a claim for equitable estoppel "where there is a duty to speak and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent." *Id.* at 27 (quoting *Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001)). The Court finds these cases distinguishable on several grounds. First, even assuming that the foregoing principle applies to easements by estoppel and assuming that CPKC had a duty to speak up, Tuggers does not allege any facts to show that CPKC knew all the relevant circumstances. Tuggers alleges that two permits were obtained, one in 2006 and one in 2016, to build docks on the Mississippi River near the Restaurant and that notice of those permits was provided to the public. Am. Compl. ¶¶ 7, 10. But according to the Amended Complaint, CPKC's objections were about alleged water runoff and the pedestrian crossing across CPKC's railroad, *id.* ¶ 17—Tuggers does not allege that CPKC objected to the docks nor does it allege that the public notice regarding the dock permits would have alerted CPKC to an unauthorized pedestrian crossing across its railroad tracks.

Moreover, the facts of the cases Tuggers cites distinguish them from the case at hand. In *Geddes*, the parties engaged in negotiations before any building commenced and the parties signed an agreement expressly allowing the defendant to proceed with its plans to build a golf course. *Geddes*, 751 N.E.2d at 1152–54. The court found that the "[p]laintiffs, by their conduct, induced or encouraged defendants to design and build the fifth hole" of the golf course and that it would be unjust and cause damage to the defendants for the plaintiffs to be allowed to object after the fact. *Id.* at 1158. Here, Tuggers does not allege that any negotiations took place between Tuggers and CPKC prior to the erection of a pedestrian crossing across CPKC's railroad. In *Hahn v. County of Kane*, 991 N.E.2d 373 (Ill. App. Ct. 2013), the plaintiff was

expressly informed several times of the planned use of the property but did not object until four years later. 991 N.E.2d at 380–82. Similarly, in *Bondy v. Samuels*, 165 N.E. 181 (Ill. 1929), the parties had numerous conversations over a period of years and in fact, initially both parties agreed to the planned use of the property. 165 N.E. at 182–87. The appellants later changed their minds, but they never objected to the appellees' proceeding with the planned work, and the court determined it would be inequitable to allow them to object at the eleventh hour. *Id.* at 187. Here, Tuggers does not allege that CPKC was expressly informed of Tuggers's (or It's On The River's) intent to construct a pedestrian crossing across CPKC's railroad tracks.

Tuggers has not pointed to factual circumstances demonstrating that CPKC's silence and failure to object for 17 years legally constitutes a "representation" entitling Tuggers to an easement by estoppel and it has failed to plead any other potential representations by CPKC that induced reliance. Accordingly, Tuggers's easement by estoppel claim fails.

### c. Public Easement of Navigation

As a final theory, Tuggers asserts that it has the right to access its docks through a "public easement of navigation allowing access of the banks of a navigable waterway." Am. Compl. ¶ 22.C. CPKC acknowledges that the public holds an easement for navigation but argues that this doctrine does not allow Tuggers or its patrons to cross CPKC's railroad tracks without authorization. Mem. Supp. Mot. Dismiss 14–15. The Illinois Supreme Court has explained that, generally, the right to use and build on the banks of a navigable river belong to the riparian owner, *Ensminger v. People ex rel. Trover*, 47 Ill. 384, 391 (Ill. 1868), although the public does possess an "incidental right to use the banks of [a navigable waterway] . . . as the purposes of navigation may require," *Alexander v. Tolleston Club of Chi.*, 110 Ill. 65, 75 (Ill. 1884). CPKC argues that Tuggers and its customers crossing over CPKC's railroad tracks is a "more-than-

incidental use of CPKC's property" and that patronizing a bar and restaurant on an inland parcel of land "is not incidental to the public right of navigation—it is not navigating public waters at all." Mem. Supp. Mot. Dismiss 15.

Tuggers lays out the history of the public easement of navigation doctrine in detail and asserts that the easement of navigation prohibits riparian landowners from interfering with the public's right to use navigable waterways for transportation. Mem. Resistance Mot. Dismiss 28–32. But Tuggers never explains how the public's right to navigate the Mississippi River is infringed upon by CPKC disallowing Tuggers's patrons to walk across active railroad tracks at an unauthorized crossing. Tuggers's interpretation of the easement of navigation is far too broad and would erode riparian rights until they completely dissolve.

Having found that Tuggers has not alleged facts showing that it owns the land abutting the Mississippi River or that it holds an easement to cross CPKC's property, the Court finds, pursuant to 735 ILCS 5/2-701(a), that Tuggers and/or its customers possess no property rights that would allow them to cross CPKC's railroad without authorization.

### B. Tortious Interference with Existing and Prospective Business Relations

CPKC argues that Tuggers's claim of tortious interference "fails because it cannot plausibly allege that CPKC is acting without justification in excluding Tuggers'[s] patrons from crossing CPKC's property." Mem. Supp. Mot. Dismiss 17–18. The elements of a tortious interference claim under Illinois law are: "(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful and unjustified interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765,

807 (N.D. Ill. 2011) (quotation marks and alterations omitted). To state a claim for tortious interference, "a plaintiff must allege, at a minimum, that the defendant acted *unjustifiably* . . . ." *Roy v. Coyne*, 630 N.E.2d 1024, 1030 (Ill. App. Ct. 1994) (emphasis added).

Tuggers cannot establish that CPKC has acted unjustifiably in enforcing its right to keep Tuggers's customers from walking across an active railroad track because "CPKC has a right to exclude Tuggers and its customers from trespassing on its property." Mem. Supp. Mot. Dismiss 18. Indeed, the right to exclude others is "one of the most treasured rights of property ownership." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021) (quotation marks omitted). Because Tuggers cannot show that CPKC's alleged interference lacks justification, Tuggers's tortious interference claim fails.

C. Injunctive Relief

As its third and final request for relief, Tuggers requests both a temporary and permanent injunction to "remedy [CPKC]'s wrongful actions, to prevent future wrongfully [sic] action and to enforce [Tuggers]'s rights as authorized by law." Am. Compl. ¶ 38. "An injunction is a type of remedy, as distinct from an underlying claim for relief." *Onyango v. Downtown Ent., LLC*, 525 F. App'x 458, 460 (7th Cir. 2013) (unpublished) (citations omitted). Because Tuggers's underlying substantive claims for relief fail, its request for an injunction must be denied.

CONCLUSION

For the foregoing reasons, Defendant Soo Line Railroad Company d/b/a Canadian Pacific's ("CPKC") Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 28, and Plaintiff PBR Group, LLC d/b/a Tuggers a/k/a Tuggers Burger & Ale House's ("Tuggers") Motion for Leave to File Over-Sized Memorandum, ECF No. 32, are GRANTED. Pursuant to Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave" to amend a

complaint "when justice so requires." Tuggers is granted leave to file an amended complaint, if it so desires, to address the deficiencies identified in this Order by October 15, 2024.

Entered this 30th day of September, 2024.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
